## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GENEVA COLLEGE; WAYNE L. HEPLER;  )
THE SENECA HARDWOOD LUMBER        )
COMPANY, INC., a Pennsylvania Corporation;  )
WLH ENTERPRISES, a Pennsylvania Sole  )
Proprietorship of Wayne L. Hepler; and  )
CARRIE E. KOLESAR                 )
                                  )
     Plaintiff,              )
                                  )
                                  )
                                  )
     v.                      )  Case No. 2:12-cv-00207
                                  )
KATHLEEN SEBELIUS                 )
*in her official capacity as Secretary of the*  )
*United States Department of Health and Human*  )
*Services,*  HILDA SOLIS          )
*in her official capacity as Secretary of the*  )
*United States Department of Labor,* TIMOTHY  )
GEITHNER                          )
*in his official capacity as Secretary of the*  )
*United States Department of the Treasury,*  )
UNITED STATES DEPARTMENT OF       )
HEALTH AND HUMAN SERVICES,        )
UNITED STATES DEPARTMENT OF       )
LABOR, UNITED STATES DEPARTMENT   )
OF THE TREASURY                   )

## MEMORANDUM OPINION AND ORDER

**CONTI, District Judge**

     Pending before the court is the Motion for Reconsideration (ECF No. 81) filed by

plaintiff Geneva College ("Geneva"). Attached to Geneva's motion is the Declaration of

Kenneth A. Smith (ECF No. 81-1), Geneva's president. Defendants Timothy Geithner, Kathleen

Sebelius, Hilda Solis, the United States Department of Health and Human Services ("HHS"), the

United States Department of Labor, and the United States Department of the Treasury

(collectively, "defendants") filed a response in opposition. (ECF No. 85.) The present motion

seeks reconsideration of the portion of this court's Memorandum Opinion and Order dated

March 6, 2013, (ECF No. 74), which dismissed Geneva's claims without prejudice for lack of

ripeness.

I.    **Background**

The present case involves Geneva's challenge to the requirement that it include coverage

for certain preventive services as part of the health insurance plans that it offers to its employees

and students. Geneva objects to the requirement in the Patient Protection and Affordable Care

Act of 2010, Pub. L. No. 111-148, 124 Stat. 119 (March 23, 2010) ("ACA") mandating that it

provide health insurance coverage for abortifacient products and contraceptives such as ella, Plan

B, and intrauterine devices, as well as sterilization procedures and patient education and

counseling for women of reproductive capacity (referred to collectively as the "objected to

services"). The ACA's requirement that health insurance plans provide coverage for the objected

to services is contained in 42 U.S.C. § 300gg-13(a)(4) (referred to generally as the "mandate").

As the court discussed in its prior opinion, defendants have promulgated certain final and

proposed regulations as part of implementing the mandate. (ECF No. 74 at 6-11.) Most pertinent

to the present motion are the proposed rules issued February 6, 2013, which purport to offer an

accommodation to religious entities like Geneva that do not fit the definition of a "religious

employer"[1] set forth in final rules promulgated August 3, 2011. The February 6, 2013 proposed

rules set forth a proposed accommodation for religious organizations that object to providing

---

[1] The religious employer exemption defines religious organizations as employers that meet the following criteria:

    (1) The inculcation of religious values is the purpose of the organization;
    (2) The organization primarily employs persons who share the religious tenets of the organization;
    (3) The organization serves primarily persons who share the religious tenets of the organization;
    (4) The organization is a nonprofit organization as described in section 6033(a)(1) and section
    6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the ACA, 76
FED. REG.46,621, 46,626 (Aug. 3, 2011). Geneva alleges that it is not subject to the religious employer exemption.
(ECF No. 32 ¶ 129.) The religious employer exemption is a final rule that will be binding on Geneva beginning
August 1, 2013.

contraceptive coverage, including religious institutions of higher education. They exclude from the mandate organizations that meet certain criteria: (1) "The organization opposes providing coverage for some or all of the contraceptive services required to be covered under [the mandate] on account of religious objections;" (2) "The organization is organized and operates as a nonprofit entity;" (3) "The organization holds itself out as a religious organization;" and (4) "The organization self-certifies that it satisfies the first three criteria." Coverage of Certain Preventive Services Under the Affordable Care Act, 78 FED. REG. 8,456, 8,462 (Feb. 6, 2013).

In the court's previous opinion, it determined that Geneva's claims were not ripe pursuant to the three-prong test set forth by the Court of Appeals for the Third Circuit in Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 647 (3d Cir. 1990). Geneva's claims were found to be unripe based upon: (1) the uncertainty created by the ongoing administrative rules process; (2) defendants' assurances in this and other cases that the final rules implementing the mandate would never be enforced against entities like Geneva; and (3) defendants' proposed rules, which the court interpreted as potentially alleviating the alleged burdens imposed by the mandate on entities like Geneva. The court acknowledged that if its understanding of how Geneva would view the impact of the proposed rules was incorrect, Geneva could file a motion for reconsideration. (ECF No. 74 at 27 n.15.)[2]

Geneva took the court up on its offer and now argues that its claims are ripe because: (1) its objection to the mandate remains unchanged despite the issuance of the proposed rules; and (2) it has already begun negotiating the terms of its student health insurance plan for the 2013-2014 plan year (which begins on August 1, 2013 (ECF No. 32 ¶ 74)), and must now choose

---

[2] The court acknowledges that Geneva's claims, as presently set forth in the First Amended Complaint, do not challenge the proposed rules. To the extent, however, that the proposed rules and other developments subsequent to the filing of the First Amended Complaint may be relevant to the ripeness of Geneva's claims, the court will consider them as necessary. See Buckley v. Valeo, 424 U.S. 1, 114-17 (1976) (ripeness inquiry may require the court to consider events occurring after the filing of the complaint).

between making available insurance subject to the objectionable proposed rules and eliminating its student health insurance plan altogether. (ECF No. 81-1.)

Defendants respond that "Geneva cannot create jurisdiction over its challenge to the <u>current</u> regulations, which will never be enforced against it, by asserting that it will object to any <u>new</u> rules defendants promulgate." (ECF No. 85 at 6.)[3]   In support, defendants cite decisions from several courts across the country finding that claims by entities similar to Geneva are not yet ripe. (<u>Id.</u> at 7-8.) Defendants also argue that the proposed rules are not final agency action and are not subject to judicial review. (<u>Id.</u> at 3-5.)

## II.   <u>Standard of Review</u>

A motion to reconsider "must rely on at least one of three grounds: 1) intervening change in controlling law, 2) availability of new evidence not previously available, or 3) need to correct a clear error of law or prevent manifest injustice." <u>Waye v. First Citizen's Nat'l Bank</u>, 846 F. Supp. 310, 313-14 (M.D. Pa. 1994), <u>aff'd</u>, 31 F.3d 1175 (3d Cir. 1994).  By reason of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided.  <u>Rottmund v. Continental Assurance Co.</u>, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992).  Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it, rightly or wrongly, has already made.  <u>Williams v. Pittsburgh</u>, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998). "Motions for reconsideration may not be used 'as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.'" <u>Knipe v. SmithKline Beecham</u>, 583 F. Supp. 2d 553, 586 (E.D. Pa. 2008) (citing

---

[3] The court notes that with this argument, defendants attempt to have things both ways. On the one hand, defendants make assurances that the regulations Geneva is challenging will never be enforced against it, but on the other hand, defendants insist that Geneva must wait to challenge the proposed rules until defendants finalize them. Given Geneva's precarious position with respect to negotiating for a new student health insurance plan, discussed below, the situation is untenable, and the court will grant Geneva's motion to reconsider.

Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990)). Such motions may not

be "'used to revisit or raise new issues with the benefit of 'the hindsight provided by the court's

analysis.''" Id. (citing Marshak v. Treadwell, No. 95-3794, 2008 WL 413312 at *7 (D. N.J. Feb.

13, 2008)). With regard to the third ground, litigants are cautioned to "'evaluate whether what

may seem to be a clear error of law is in fact simply a point of disagreement between the Court

and the litigant.'"  Waye, 846 F. Supp.at 314 n.3 (citing Atkins v. Marathon LeTourneau Co.,

130 F.R.D. 625, 626 (S.D. Miss. 1990)).

**III.     Discussion**

    **A.     Geneva's Basis for Reconsideration**

       Geneva's motion is primarily directed at the short timeframe within which it must now

negotiate the terms of its student health insurance plan. The next plan year for the student health

insurance plan begins on August 1, 2013. See ECF No. 32 ¶ 74. Kenneth A. Smith, Geneva's

president, asserts in his declaration that, as of April 5, 2013, "officials have already been

communicating with First Risk Advisors about the student health plan for the 2013-14 school

year." (ECF No. 81-1 ¶ 2.) Based upon those discussions, Geneva determined that "[t]here is a

significant probability that [it] will simply cease facilitating health insurance coverage for its

students . . . given the moral and religious unacceptability of the 'accommodation' set forth in

the [proposed rules]." (Id. ¶ 4.) If Geneva chooses to eliminate its student health insurance plan,

it must provide notice to its students no later than May 13, 2013. (Id. ¶ 6.)

       Geneva identifies no specific grounds for reconsideration upon which it bases the present

motion (i.e. newly available evidence, etc.). Courts have found that "[t]o support a motion for

reconsideration on the basis of newly available evidence, the movant must 'show not only that

this evidence was newly discovered or unknown to it until after the hearing, but also that it could

not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion].'" <u>Cabrita Point Dev., Inc. v. Evans</u>, Nos. 2006-103, 2006-109, 2009 WL 3245202 at *2 (D. V.I. Sept. 30, 2009) (second alteration in original) (quoting <u>Caisse Nationale de Credit Agricole v. CBI Indus., Inc.</u>, 90 F.3d 1264, 1269 (7th Cir. 1996)). To the extent that the passage of time since the filing of the initial complaint now impacts the timing of the negotiations for Geneva's 2013-14 student health insurance plan and in light of the potential impact of the proposed rules on decisions surrounding its student health plan, that information presents newly available evidence appropriate for reconsideration.

The crux of Geneva's concerns appear to be that the proposed rules do not moot the issues it raised in the complaint, and it must finalize its student health insurance plan before August 1, 3013. Defendants did not indicate that the final rules will be implemented in time for Geneva to meet that deadline. To the extent that those new facts impact the court's previous conclusions, the court will reconsider whether Geneva's claims are now ripe for judicial review.

### B.     Ripeness Inquiry under the <u>Step-Saver</u> Framework

The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves over disagreements over administrative policies," and "protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." <u>Nat'l Park Hospitality Ass'n v. Dep't of the Interior</u>, 538 U.S. 803, 807-08 (2003) (citing <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148-49 (1967)). Underpinning the ripeness doctrine are considerations of "whether the facts of the case are 'sufficiently developed to provide the court with enough information on which to decide the matter conclusively,' and whether a party is 'genuinely aggrieved so as to avoid the expenditure of judicial resources on matters which have caused

harm to no one.'" Khodara Envtl., Inc. v. Blakey, 376 F.3d 187, 196 (3d Cir. 2004) (citing Peachlum v. City of York, Pa., 333 F.3d 429, 433-34 (3d Cir. 2003)).

In Abbott Labs, the United States Supreme Court set forth the two fundamental considerations in determining ripeness: (1) "the fitness of the issues for judicial decision;" and (2) "the hardship to the parties of withholding court consideration." Abbott Labs, 387 U.S. at 149. In the context of a pre-enforcement declaratory judgment action, the Court of Appeals for the Third Circuit refined the Abbott Labs test, requiring courts to consider: (1) the adversity of the parties' interests; (2) the conclusiveness of the judgment with respect to the legal relationship between the parties; and (3) the practical help or utility of the judgment. Step-Saver, 912 F.2d at 647.

### 1.    Adversity of Interest

To satisfy the first prong of the Step-Saver framework, "the party seeking review need not have suffered a 'completed harm' to establish adversity of interest . . . it is necessary that there be a substantial threat of real harm and that the threat 'must remain 'real and immediate' throughout the course of the litigation.'" Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1463 (3d Cir. 1994) (internal citations omitted) (emphasis added). "[A] potential harm that is 'contingent' on a future event occurring will likely not satisfy this prong of the ripeness test." Pittsburgh Mack Sales & Serv. v. Int'l Union of Operating Eng'rs, Local Union No. 66, 580 F.3d 185, 190 (3d Cir. 2009) (citing Step Saver, 912 F.2d at 647-48). If a subsequent event removes the potential harm, then the controversy becomes speculative and the claim is no longer ripe. Presbytery of N.J., 40 F.3d at 1463.

The additional facts set forth by Geneva indicate that its interests are now sufficiently adverse to defendants' interests for two reasons. First, Geneva maintains its objection to the

proposed rules on the basis that, in the proposed rules' current form, defendants took a "smoke

and mirrors" approach to accommodating those with religious objections to the mandate. The

"contingency" the court previously relied upon—i.e. that the proposed rules would ultimately

render Geneva's claims unripe, therefore, does not appear to be the case. Specifically, Geneva

objects to the requirement that it directly

> facilitate objectionable coverage by providing and paying for a plan that is itself
> necessary for the employee to obtain the [objected to services], . . . nor is it
> apparently 'free' since a variety of costs contained in the Mandate would
> necessarily be passed onto the employer through premiums and/or administrative
> charges.

(ECF No. 32 ¶ 162) (addressing the "compromise" offered by President Barack Obama at a press

conference in February 2012 which set forth an accommodation similar to that in the proposed

rules).[4] In light of Geneva's objection to providing health plans that act as a "ticket" to obtaining

coverage for the objected to services, the proposed rules do not assuage Geneva's concerns.

Notwithstanding the temporary enforcement safe harbor, which remains in effect only until

August 1, 2013, the regulatory scheme implementing the mandate continues to be objectionable

to Geneva.

Second, Geneva is suffering real and immediate harm now that it is in the process of

contracting for its student health insurance plan. The court previously held that Geneva's

concerns with respect to the mandate were "contingent" on an event that was unlikely to occur

(namely, that the final rules would not be enforced against it), and therefore its claims were not

ripe. (ECF No. 74 at 25.) The new facts set forth by Geneva illustrate that it must decide now

---

[4] On February 10, 2012, President Obama announced that his administration would consider an accommodation whereby insurance companies for entities that object to providing the objected to services would provide the services directly to women who seek them, "with no role for religious employers who oppose contraception." Press Release, The White House, Women's Preventive Services and Religious Institutions (February 10, 2012) (available at http://www.whitehouse.gov/the-press-office/2012/02/10/fact-sheet-women-s-preventive-services-and-religious-institutions (last visited May 6, 2013)). The proposed accommodation tracks closely the accommodation set forth in the proposed rules.

whether to continue providing a student health insurance plan and it must make that decision in advance of defendants' August 1, 2013 deadline to publish final rules. With the contingency thus removed, Geneva is now suffering a real and immediate harm that is ripe for adjudication.

As articulated by Geneva's president, the college is now being forced to choose—in a very short timeframe—between making available student health insurance that remains objectionable despite the proposed rules, and foregoing student health insurance altogether in response to the final rules that will be imposed beginning on August 1, 2013. (ECF No. 81-1.) The negotiating process surrounding this decision has already begun, and is ongoing. (Id.) Where an administrative action (such as the proposed rules) "causes a change in the day-to-day behavior of the complaining party," the claims are ripe. 5 Jacob A. Stein, Glenn A. Mitchell & Basil J. Mezines, Administrative Law, § 48.04 (2012) (hereinafter Administrative Law) (citing Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 81 (1978)). Here, Geneva's ability to negotiate is fundamentally impacted by the final rules and the proposed rules, none of which alleviate its religious objections to the mandate. Geneva cannot, therefore, simply carry on as though nothing will happen. Geneva must make a determination now based upon defendants' mandate as it stands, which remains at odds with Geneva's belief system in spite of the proposed rules. Geneva raises objections to both the compromise from February 2012 and the proposed rules from February 2013. Given the existing final regulations and the similarity in the proposals, the threat of harm faced by Geneva is presently "real and immediate." See Presbytery of N.J., 40 F.3d at 1463. The adversity of interest prong is satisfied.

### 2.      Conclusiveness of Judgment

With respect to the conclusiveness of judgment prong, it is significant that the proposed rules took a substantial step toward finalizing the regulations that will apply to Geneva—

9

regulations that Geneva maintains are objectionable despite the proposed accommodation. The Court of Appeals for the Third Circuit has held that the conclusiveness inquiry requires the court to determine whether there is a "'real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.'" <u>Step-Saver</u>, 912 F.2d at 649 (citing <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 241 (1937)). Courts acknowledge, however, that "[t]he requirement of concreteness has some play in the joints." <u>Presbytery of N.J.</u>, 40 F.3d at 1463. From Geneva's perspective, the facts at the present time are sufficiently developed to be ripe for decision. Defendants contend, however, that the regulations implementing the mandate are not final rules, and therefore the court cannot make a conclusive judgment at this time.

The conclusiveness factor of the <u>Step-Saver</u> test overlaps, for present purposes, with the finality requirement articulated by the Supreme Court in the <u>Abbott Labs</u> decision.[5] <u>Abbott Labs</u>, 387 U.S. at 149-50. Finality requires that an agency action be sufficiently final such that it affects the parties "in a concrete way." <u>Id.</u> at 148. Courts assessing finality of an administrative action

> should reflect a pragmatic and flexible approach. . . . The agency's characterization of the action is not decisive. An agency order lacking immediate legal effect may have sufficient legal consequences to be considered final, <u>even though it may not be the last step the agency will take</u>.

ADMINISTRATIVE LAW, § 48.03[1] (emphasis added). The Supreme Court has acknowledged:

> The possibility of further proceedings in the agency . . . does not, in our view, render the orders less than 'final.' . . . Our cases have interpreted pragmatically the requirement of administrative finality, focusing on whether judicial review at

---

[5] The Court of Appeals for the Third Circuit has held that the "<u>Step-Saver</u> rubric is a distillation of the factors most relevant to the <u>Abbott Labs</u> considerations. . . . Adversity and conclusiveness apparently are subsumed under the 'fitness' prong of the <u>Abbott Labs</u> test, while utility is relevant both to 'fitness' and 'hardship.'" <u>NE Hub Partners, L.P. v. CNG Transmission Corp.</u>, 239 F.3d 333, 342 n.9 (3d Cir. 2001). The finality requirement seems to fit with the conclusiveness factor in the present case because the degree to which the proposed rules are final will dictate whether the court is rendering a decision on a "hypothetical set of facts," i.e. whether the mandate in its present form applies to Geneva. <u>Step-Saver</u>, 912 F.2d at 649.

the time will disrupt the administrative process. Review of the agency's decision at this time will not disrupt administrative proceedings. . . . The agency's determination . . . represented a definitive statement of its position, determining the rights and obligations of the parties.

Bell v. New Jersey & Pennsylvania, 461 U.S. 773, 779-80 (1983) (internal citations omitted).

Likewise, in Lauderbaugh v. Hopewell Township, 319 F.3d 568, 574-75 (3d Cir. 2003), the Court of Appeals for the Third Circuit addressed the finality requirement and found that a municipal official's decision that prohibited installation of a mobile home was a final decision ripe for judicial review, despite the possibility that the decision could change on appeal to the zoning hearing board. Lauderbaugh, 319 F.3d at 574-75 (noting that "[the defendant] cannot treat its [administrative] decision as final enough to force a significant hardship upon [the plaintiff] . . . but not final enough to be ripe for adjudication").

Defendants maintain that the proposed rules "are just that—proposals" and thus have no binding legal effect. (ECF No. 85 at 3.) Defendants cite several court decisions in support of the proposition that "this Court lacks jurisdiction over any challenge plaintiff could mount to the [proposed rules]." (Id.) This formalistic approach belies, however, the Supreme Court's "pragmatic" and "flexible" approach to determining whether an administrative rule is final for justiciability purposes. Abbott Labs, 387 U.S. at 149. Courts acknowledge that the possibility of further agency proceedings is not necessarily dispositive of the finality issue. Bell, 461 U.S. at 779. Courts have also found that the label given to a particular agency decision is not conclusive. Fidelity Television, Inc. v. F.C.C., 502 F.2d 443, 448 (D.C. Cir. 1974). As the court in Fidelity Television noted:

The principle of finality in administrative law is not, however, governed by the administrative agency's characterization of its action, but rather by a realistic assessment of the nature and effect of the order sought to be reviewed. . . . Hence, 'a final order need not necessarily be the very last order' in an agency proceeding

. . . but rather, is final for purposes of judicial review when it 'impose(s) an obligation, den(ies) a right, or fix(es) some legal relationship.

Id. (footnotes omitted)

Applying the flexible and pragmatic approach suggested in Abbott Labs, the court notes that the proposed rules have been formally published in the Federal Register and are the most up-to-date statement of defendants' position. Beginning in February 2012, a full year prior to the issuance of the proposed rules, President Barack Obama offered a "compromise" for religious institutions that did not qualify for the religious employer exemption from the mandate—a proposal that is quite similar to the proposed rules. Given the lack of change in the rules as they have developed, the court concludes that the rules are sufficiently final to be the basis for judicial decision.

At this time all plaintiffs like Geneva have to rely on until a final rule is published are the existing final rules and the proposed rules. Geneva will soon be subject to the existing final rules, which contain no exemptions relevant to entities like it. The existing final rules are challenged in the present lawsuit, but the question remains whether the proposed rules will moot any remaining issue. Geneva claims they do not and that its claims are ripe for a determination. In light of the timeframe set forth in the proposed rules which indicate that a final rule on the accommodations may not be adopted until August 1, 2013,[6] Geneva is potentially without any "final" guidance (as defendants would define it) until the very day it is expected to have a student health insurance plan in place—a process that, in reality, can take many months. Like in Bell, judicial determination of Geneva's claims at the present time will yield a conclusive result, if Geneva succeeds on the merits, insofar as it will prevent defendants from imposing a severe hardship on Geneva. It seems disingenuous for defendants to argue there is no significant hardship when

---

[6] See 76 FED. REG. at 8,458 (indicating that the temporary enforcement safe harbor remains in effect until August 1, 2013, and defendants are "committed to rulemaking" during that period).

Geneva would potentially have to wait until the last possible moment before it can receive a conclusive judgment with respect to rules that have long been promulgated and published in the Federal Register. See Lauderbaugh, 319 F.3d at 575. As such, any decision rendered at this time will be conclusive with respect to Geneva's claims.

### 3.      Practical Help or Utility

From a practical standpoint, a court determination with respect to Geneva's claims serves a useful purpose at this juncture given the limited time Geneva has to make changes to its student health plan. As defendants previously acknowledged, the "requirements in the [regulations related to the mandate] require significant lead time in order to implement." Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act, 75 FED. REG. 41,726, 41,730 (Jul. 19, 2010). Given Geneva's precarious position of having to choose between maintaining objectionable student health insurance coverage and foregoing student health insurance coverage altogether, any resolution that avoids such a choice will confer a benefit.

The court's previous opinion rejected Geneva's argument that a favorable judgment would assist with its planning process for future health insurance plan years. (ECF No. 74 at 29.) The court now reconsiders that conclusion in light of the additional facts brought to the court's attention. Geneva is no longer planning for some indefinite event in the future, it is already planning and suffering a hardship by being forced to choose between making available objectionable coverage and foregoing student health insurance altogether. Courts acknowledge that an "agency regulation which prevents a business from competing or entering into business contracts has been held to cause hardship if judicial review was not immediate." ADMINISTRATIVE LAW § 48.04 (citing Indep. Bankers Ass'n of Am. v. Smith, 534 F.2d 921, 929

(D.C. Cir. 1976)). The present situation does just that. Because defendants failed to build sufficient lead time into their rulemaking for entities like Geneva whose plan years begin on August 1, 2013, Geneva is now making critical decisions about its student health plan and will continue to suffer real hardship absent a court ruling.

Defendants point to the majority of court decisions finding that claims by entities like Geneva are not ripe. (ECF No. 85 at 7-8.) Many of those courts, however, rendered their decisions before the proposed rules were promulgated and nearly all the decisions involved factually inapposite situations. Specifically, they involved institutions with health insurance plan years that do not begin until **after** August 1, 2013, thus allowing sufficient planning time in light of defendants' yet-to-be-published final rules. See Franciscan Univ. of Stubenville v. Sebelius, No. 12-CV-440, 2013 WL 1189854 at *5 (S.D. Ohio Mar. 22, 2013) (plan year beginning January 1, 2014); Eternal World Television Network, Inc. v. Sebelius, No. 12-CV-501, 2013 WL 1278956 at *13 (N.D. Ala. Mar. 25, 2013) (plan year beginning July 1, 2014); Ave Maria Univ. v. Sebelius, No. 12-cv-88, 2013 WL 1326638 at *1 (M.D. Fla. Mar. 29, 2013) (subject to safe harbor until January 1, 2014); Criswell Coll. V. Sebelius, No. 12-CV-4409 (N.D. Tex. Apr. 9, 2013) (subject to safe harbor until January 1, 2014); Priests for Life v. Sebelius, No. 12-cv-00753 (E.D. N.Y. Apr. 12, 2013) (stipulation that the defendants would not enforce the regulations against the plaintiff through December 31, 2013); Wenski v. Sebelius, No. 12-cv-23820 (S.D. Fla. Mar. 5, 2013) (subject to safe harbor until July 1, 2014); Roman Catholic Diocese of Dallas v. Sebelius, No. 12-CV-1589-B, 2013 WL 687080 at *16 (N.D. Tex. Feb. 26, 2013) (plan year beginning January 1, 2014); Conlon v. Sebelius, No. 12-cv-3932, 2013 WL 500835 (N.D. Ill. Feb. 8, 2013) (various plaintiffs subject to safe harbor until October 1, 2013, January 1, 2014, and July 1, 2014 (see First Amended Complaint, ECF No. 27 ¶¶ 47, 81, 106,

116, 153)); <u>Archdiocese of St. Louis v. Sebelius</u>, No. 12-CV-00924, 2013 WL 328926 (E.D. Mo. Jan. 29, 2013) (subject to safe harbor until July 1, 2014 (<u>see</u> Complaint, ECF No. 1 ¶¶ 28, 89)); <u>Roman Catholic Archbishop of Washington v. Sebelius</u>, No. 12-cv-0815, 2013 WL 285599 at *1 (D. D.C. Jan. 25, 2013) (subject to safe harbor until January 1, 2014); <u>Persico v. Sebelius</u>, No. 12-cv-123, 2013 WL 228200 at *9 (W.D. Pa. Jan. 22, 2013) (subject to safe harbor until July 1, 2014); <u>Catholic Diocese of Peoria v. Sebelius</u>, No. 12-cv-01276, 2013 WL 74240 (C.D. Ill. Jan. 4, 2013) (subject to safe harbor until July 1, 2014 (<u>see</u> Complaint, ECF No. 1 ¶¶ 44, 81)); <u>Catholic Diocese of Biloxi v. Sebelius</u>, No. 12-cv-00158, 2012 WL 6831407 (S.D. Miss. Dec. 20, 2012) (various plaintiffs subject to safe harbor until October 1, 2013 and July 1, 2014 (<u>see</u> Complaint, ECF No. 1 ¶ 64)); <u>Zubik v. Sebelius</u>, No. 12-cv-00676, 2012 WL 5932977 at *8 (W.D. Pa. Nov. 27, 2012) (all plaintiffs subject to safe harbor until January 1, 2014); <u>Wheaton College v. Sebelius</u>, 887 F. Supp. 2d 102, 107 n.5 (D. D.C. 2012) (subject to safe harbor until January 1, 2014); <u>Belmont Abbey Coll. v. Sebelius</u>, 878 F. Supp. 2d 25, 35 (D. D.C. 2012) (subject to safe harbor until January 1, 2014); <u>but see</u> <u>Univ. of Notre Dame v. Sebelius</u>, No. 12CV253, 2013 WL 6756332 at *1 (N.D. Ind. Dec. 31, 2012) (employee health plan subject to safe harbor until January 1, 2014, student health plan year begins August 15); <u>Colorado Christian Univ. v. Sebelius</u>, No. 11-cv-03350, 2013 WL 93188 (D. Colo. Jan. 7, 2013) (employee health plan subject to safe harbor until July 1, 2014, student health plan year begins in "mid-August" (<u>see</u> Amended Complaint, ECF No. 26 ¶¶ 43-44)); <u>Catholic Diocese of Nashville v. Sebelius</u>, No. 12-0934, 2012 WL 5879796 (M.D. Tenn. Nov. 21, 2012) (nonexempt plaintiffs subject to safe harbor until January 1, 2014, other plaintiffs' plan years begin on August 1, 2013 (<u>see</u> Complaint, ECF No. 1 ¶¶ 66, 128).

As illustrated in the decisions cited by defendants, Geneva is one of very few challengers to the mandate that must contract for its student health insurance plan in the near future and will potentially implement that plan prior to any further rulemaking by defendants. A conclusive ruling at this time will help Geneva make its choice with respect to whether to maintain a student health plan and will therefore be of practical help or utility.

### 4.     Balancing the Factors

Taking all the Step-Saver factors into account, Geneva established that its claims are ripe for adjudication. Although further rulemaking is likely to take place, the court concludes the final rules and the proposed rules for accommodations are sufficiently final to satisfy the adversity of interest, conclusivity, and practical help and utility elements of the Step-Saver test. Any finding to the contrary would risk subjecting Geneva to the substantial hardship of preventing it from negotiating for its student health insurance plan.

### C.     Defendants' Motion to Dismiss

Based upon the court's conclusion that Geneva's claims are ripe and that all plaintiffs assert essentially the same legal challenges to the mandate, the court finds that, for the same reasons set forth in its previous opinion, (ECF No. 74), defendants' motion to dismiss will be granted in part to the same extent it was with respect to the claims of Wayne L. Hepler, Carrie E. Kolesar, and the Seneca Hardwood Lumber Company, Inc. Defendants' motion to dismiss is granted without prejudice with respect to Geneva's Establishment Clause claim (count III); its Free Speech Clause claim (count IV); and its arbitrary and capricious and contrary to law claims under the Administrative Procedure Act (count VI (in part)); and is granted with prejudice (because further amendment would be futile) with respect to its Fifth Amendment Due Process Clause claim (count V).

Defendants' motion to dismiss is denied in part for the same reasons set forth in the previous opinion with respect to Geneva's Religious Freedom Restoration Act claim (count I), its Free Exercise Clause claim (count II); and its notice and comment claim under the Administrative Procedure Act (count VI (in part)). An appropriate order follows.

## **ORDER**

For the reasons stated above, it is HEREBY ORDERED that Geneva College's motion for reconsideration (ECF No. 81) with respect to whether its claims are ripe is GRANTED.

It is FURTHER ORDERED that Geneva's claims are ripe for adjudication, and, for the reasons set forth in the court's previous opinion, defendants' motion to dismiss (ECF No. 39) is GRANTED IN PART, as follows:

- The claims set forth in count III and count IV are dismissed without prejudice;

- The arbitrary and capricious and contrary to law claims set forth in count VI are dismissed without prejudice; and

- The claim set forth in count V is dismissed with prejudice.

It is FURTHER ORDERED that in all other respects defendants' motion to dismiss counts I, II, and VI is DENIED.

SO ORDERED, this 8th day of May, 2013.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

17